**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CHARLES SCHWAB & CO., INC., a
California Corporation,

                                        Case No.

     Plaintiff,

v.

THREATLOCKER, INC., a
Delaware Corporation,

     Defendant.

_____/

**COMPLAINT**

Plaintiff Charles Schwab & Co., Inc., a California corporation ("Schwab" or "Landlord"), sues Defendant ThreatLocker, Inc., a Delaware corporation ("ThreatLocker" or "Tenant"), and alleges as follows:

1.      Tenant failed to pay rent under a commercial lease and wrongfully abandoned the Leased Premises.[1] The commercial Office Lease Agreement dated July 12, 2022, is by and between Mikeone EK Maitland Summit, LLC ("Mikeone") as landlord and ThreatLocker as Tenant for Suites 300 and 400 located on the third and fourth floors and approximately 1,500 rentable square feet located on the first floor, of the commercial office building located at 1950 Summit Park Drive, Orlando, FL 32810

---

[1]      Capitalized terms not defined herein have the meaning as ascribed in the Lease.

1

(collectively with the First and Second Amendments, "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit "**A**."

2.     Schwab is the Landlord and successor-in-interest to Mikeone with respect to the Lease pursuant to a fully executed assignment in connection with Schwab's acquisition of 1950 Summit Park Drive on or around December 18, 2024. A true and correct copy of the Assignment is attached hereto as Exhibit "**B**." As such, Schwab has standing to enforce Tenant's obligations under the Lease.

## JURISDICTION AND VENUE

3.     Schwab is a California corporation with its principal place of business in Westlake, Texas.

4.     ThreatLocker is a Delaware corporation with its principal place of business in Orange County, Florida.

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     This Court has personal jurisdiction over ThreatLocker pursuant to Florida Statute § 48.193(1)(a)(1) and (7) because its principal place of business is in Florida and it breached its obligations under the Lease in Florida.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Leased Premises are in the Middle District of Florida, Orlando Division, and Tenant's breach of the Lease occurred in this District.

## General Allegations

8.      Tenant materially breached the Lease by failing to pay its Rental Payments, wrongfully abandoning the Leased Premises, and anticipatorily repudiating its ongoing contractual obligations.

9.      Mikeone and Tenant entered into the original Lease on July 12, 2022. The Lease was subsequently amended by the First Amendment dated March 21, 2023, which established a commencement date of November 1, 2022, and extended the Term of the Lease through and including January 31, 2029, and by the Second Amendment dated December 5, 2024, which updated Tenant's notice address.

10.     The Lease remains active and in full force and effect through January 31, 2029, and Tenant is bound by its obligations under the Lease through that date.

11.     In exchange for the exclusive use of and occupancy of the Leased Premises, Tenant agreed to pay its Rental obligations and to comply with all other obligations under the Lease.

12.     Article II of the Lease governs Tenant's Rental payment obligations. Tenant agreed to make monthly Rental Payments, which include Base Rental, Additional Rental Adjustment, Operating Expenses and Sales Tax. *See* Lease at §§ 2.1-2.4, 2.6.

13.     Rental is defined at Section 2.1(c) of the Lease as:

[T]he term "**Rental**" shall mean and collectively refer to the Base Rental, Tenant's Forecast Additional Rental, Tenant's Additional Rental Adjustment and other sums payable by Tenant hereunder. Tenant agrees to pay all Rental at the times and in the manner provided in this Lease, without abatement

(except as may be otherwise expressly provided herein), demand, notice, setoff, deduction or counterclaim (except as may be otherwise expressly provided herein), and all sums payable under this Lease by Tenant shall be deemed to be Rental due and owing hereunder. All Rental shall bear interest from the fifth (5th) day after the date due thereof until paid at the lesser of (i) a per annum rate equal to the "prime rate" announced by Chase Manhattan Bank, New York, New York, or its successor (or if the "prime rate" is discontinued, the rate announced as that being charged to the most credit-worthy commercial borrowers) plus two percent (2%) or (ii) the maximum interest rate per annum allowed by law.

14.    Additionally, to secure payment of all Rental obligations, the Lease "grants Landlord a first in priority security interest upon all goods, wares, equipment, merchandise, fixtures (including trade fixtures), furniture, improvements, and other personal property of Tenant of Tenant presently or hereafter situated in the Leased Premises (collectively, the "**Collateral**"), and all proceeds from the sale or lease thereof, and such property shall not be removed from the Leased Premises without the consent of Landlord, except in the ordinary course of business, until Tenant has paid all Rental payable by Tenant hereunder and complied with all the agreements and conditions hereof." *See id*. at § 2.5.

15.    On April 1, 2026, Tenant failed to pay its monthly Rental installment, which was due and payable on that date. *See id*. at § 2.1(b).

16.    Tenant's failure to pay its Rental obligation is a material breach of the Lease.

17.    The Lease provides a five (5) day cure period following the due date, by which Tenant may cure a failure to pay Rental. *See id*. at §7.1(a)(i). Section 7.1(a)(i)

4

provides: "Failure by Tenant to pay any Rental within five (5) days after the same becomes due hereunder" is an Event of Default.

18.    The cure period expired on April 6, 2026 without Tenant having made any payment, thereby triggering an Event of Default under the Lease. *Id.*

19.    As of the date of filing of this Complaint, Tenant remains in default under the Lease and the following Rental payments are due and owing:

    a.  The Base Rental installment that was due on April 1, 2026 in the amount of $94,686.44;

    b.  Tenant's Additional Rental Adjustment installment due on April 1, 2026 in the amount of $52,501.87;

    c.  The Base Rental installment that was due on May 1, 2026 in the amount of $94,686.44; and

    d.  Tenant's Additional Rental Adjustment installment due on April 1, 2026 in the amount of $52,501.87.

20.    The unpaid Rental currently due and owing exceeds $294,376.62, exclusive of interest, late fees, and future Rental that will continue to accrue throughout the remainder of the Term of the Lease through and including January 31, 2029. Exclusive of interest and late fees, Tenant owes approximately $5,133,822.00 in Rental between April 1, 2026 and January 1, 2029.

21.    On April 6, 2026, interest on all unpaid Rental began accruing at the applicable contract rate. Interest will continue to accrue until paid in full. *See id.* at

§2.1(c). Tenant is also liable for late charges, equal to five percent (5%) of each unpaid amount for each thirty (30) day period that such amounts remain outstanding. *See id.* at § 7.3.

22.    In addition to its failure to pay Rental, Tenant has also breached Section 1.3 of the Lease, which provides, in relevant part, that "[t]he Leased Premises are to be used and occupied by Tenant (and its permitted assignees and subtenants) solely for general office purposes." As explained and defined below, Tenant's Repudiation Letter and Press Release confirm that Tenant has abandoned the Leased Premises in breach of its use and occupancy obligations under Section 1.3 of the Lease.

23.    On information and belief, Tenant has vacated the Leased Premises and intends to cease performing any of its obligations under the Lease for the remainder of the Term of the Lease.

24.    On information and belief, Tenant has purchased a new property located at 1901 Summit Park Boulevard, Orlando, FL 32810 and has moved its operations to that space. A true and correct copy of Tenant's press release, publicly posted on its website is attached hereto as Exhibit "**C**" (the "Press Release"). Tenant's decision to purchase a new property does not absolve it of its obligations under the Lease, which remains in full force and effect through January 31, 2029.

25.    In complete repudiation of its obligations under the Lease, on or about April 8, 2026, Tenant notified Landlord that it was abandoning the Leased Premises (the "Repudiation Letter").

6

26. Schwab has explicitly rejected Tenant's purported abandonment of the Leased Premises.

27. No provision in the Lease allows Tenant to abandon the Leased Premises, repudiate its obligations, or unilaterally terminate its tenancy without suffering the consequences of an Event of Default.

28. Although not required under the Lease, Landlord provided Tenant with written notice of default (the "Default Notice") on April 14, 2026, demanding payment of all overdue Rental and affording Tenant an opportunity to cure. A true and correct copy of the Default Notice is attached hereto as Exhibit "**D**".

29. Tenant failed and refused to cure its default.

30. Section 7.1(b)(vi) of the Lease provides, in relevant part, that upon an Event of Default, Landlord may, at its option:

> accelerate the maturity and due date of the whole or any part of the Base Rental and Tenant's Additional Rental for the balance of the term of the Lease, as well as all other sums, charges, payments, costs and expenses required to be paid by Tenant… such that all sums due and payable under this Lease for the balance of the term… shall… be due and payable in advance as of the date of such acceleration. Landlord may recover and collect all such unpaid Base Rental, Tenant's Additional Rental and other sums due and owing by Tenant . . .

31. Pursuant to Section 7.1(b)(vi) of the Lease, upon Tenant's default and failure to cure, Landlord has elected to accelerate the maturity and due date of all Rental (as defined in the Lease) and all other sums due for the remainder of the Term of the Lease, and all such amounts are now immediately due and payable.

32.     Pursuant to Section 7.1(b) and other applicable provisions of the Lease, Landlord has exercised, and continues to reserve, all rights and remedies available under the Lease and applicable law, including, without limitation:

a. recovery of all unpaid Rental;

b. acceleration of all Rental and other sums due for the remainder of the Term of the Lease, such that all amounts are immediately due and payable;

c. enforcing its first in priority security interest upon Tenant's possessions;

d. recovery of all damages arising from Tenant's breach; and

e. recovery of all attorneys' fees and costs incurred in enforcing the Lease.

33.     Schwab has retained undersigned counsel to prosecute this matter and is obligated to pay the undersigned a reasonable attorneys' fee.

34.     All conditions precedent to this action have been performed or are excused.

## COUNT I - BREACH OF LEASE
### (Failure to Pay Rent)

35.     Landlord re-alleges the allegations of paragraphs 1 through 34 above, as if fully set forth herein.

36.     The Lease is a valid and enforceable written contract. Schwab, as successor-in-interest to Mikeone, has fully performed its material obligations under the Lease.

37.     Tenant materially breached the Lease by failing to pay Rental when due, specifically: Tenant failed to pay the following amounts on April 1, 2026 and on May 1, 2026, and has failed and refused to pay them to date:

a.     The Base Rental installment in the amount of $94,686.44; and

b.     Tenant's Additional Rental Adjustment installment in the amount of $52,501.87.

38.     Tenant further materially breached the Lease when it failed to cure within the five (5) day cure period provided under Section 7.1(a)(i) of the Lease, which expired om April 6, 2026, thereby triggering an Event of Default.

39.     As a direct and proximate result of Tenant's breach, interest began accruing on all unpaid Rental as of April 6, 2026, at the rate provided in Section 2.1(c) of the Lease, and late charges began accruing pursuant to Section 7.3 of the Lease at the rate of five percent (5%) of each unpaid installment for each thirty (30) day period such amounts remain outstanding. Tenant's failure to pay such interest and late charges as they have accrued constitute an additional and independent breach of the Lease.

40.     Pursuant to Section 7.1(b)(vi) of the Lease, Landlord has elected to accelerate all Rental and other sums due for the remainder of the Lease Term through and including January 31, 2029, and all such amounts are now immediately due and payable.

41.    As a direct and proximate result of Tenant's material breach, Landlord has suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiff Charles Schwab & Co., Inc., as Landlord and successor-in-interest to Mikeone EK Maitland Summit, LLC, demands judgment against Defendant ThreatLocker, Inc. for: (a) all unpaid Rental currently due and owing in the amount of no less than $294,376.62; (b) all accelerated Rental for the remainder of the Lease Term through and including January 31, 2029; (c) interest accruing from April 6, 2026 at the contract rate; (d) all applicable late charges; (e) reasonable attorneys' fees and costs pursuant to Section 7.4 of the Lease; (f) all court costs and litigation expenses; and (g) such other and further relief as this Court deems just and proper.

## COUNT II - BREACH OF LEASE
### (Abandonment & Anticipatory Repudiation)

42.    Landlord re-alleges the allegations of paragraphs 1 through 34 above, as if more fully set forth herein.

43.    The Lease is a valid and enforceable contract.

44.    Schwab, as successor-in-interest to Mikeone, has fully performed its material obligations under the Lease.

45.    On or about April 1, 2026, Tenant vacated and abandoned the Leased Premises and ceased performing its obligations under the Lease prior to the expiration of the Lease Term. Tenant's Repudiation Letter, together with its Press Release announcing its relocation to 1901 Summit Park Boulevard, Orlando, Florida 32810,

constitutes a clear, definite, and unequivocal refusal to perform its remaining obligations under the Lease, and amounts to an anticipatory repudiation of the Lease. Tenant's abandonment and stated intent not to perform its obligations under the Lease constitute a material breach and anticipatory repudiation of the Lease.

46.     As a direct and proximate result of Tenant's breach, Landlord has suffered damages and will continue to suffer damages.

**WHEREFORE**, Plaintiff Charles Schwab & Co., Inc., as Landlord and successor-in-interest to Mikeone EK Maitland Summit, LLC, demands judgment against Defendant ThreatLocker, Inc. for: (a) all damages arising from Tenant's abandonment and anticipatory repudiation of the Lease; (b) all unpaid Rental currently due and owing; (c) all Rental and other sums due for the remainder of the Term of the Lease through and including January 31, 2029; (d) interest and late charges accruing pursuant to the Lease; (e) reasonable attorneys' fees and costs pursuant to Section 7.4 of the Lease; and (f), such other and further relief as this Court deems just and proper.

## COUNT III - BREACH OF LEASE
### (Violation of Landlord's Security Interest)

47.     Landlord re-alleges and incorporates by reference the allegations of paragraphs 1 through 34 above as if fully set forth herein.

48.     The Lease is a valid and enforceable written contract.

49.     Schwab, as successor-in-interest to Mikeone, has fully performed its material obligations under the Lease.

50.     Section 2.5 of the Lease expressly grants Landlord a first-priority security interest in the Collateral, and all proceeds from the sale or lease thereof. The Lease expressly provides that such Collateral "shall not be removed from the Leased Premises without the consent of Landlord, except in the ordinary course of business, until Tenant has paid all Rental payable by Tenant hereunder and complied with all the agreements and conditions hereof." *See* Lease § 2.5.

51.     The Lease further provides that it "is intended as and constitutes a security agreement within the meaning of the Uniform Commercial Code of the State of Florida," and that upon the occurrence of any Event of Default, Landlord may enter upon the Leased Premises, take possession of the Collateral, and sell the Collateral pursuant to the applicable provisions of the Florida Uniform Commercial Code. *See id.*

52.     As set forth above, Tenant is in an Event of Default under the Lease because of its failure to pay Rental and its abandonment of the Leased Premises. As of the date of this Complaint, Tenant has not paid all Rental due under the Lease and has not complied with the terms and conditions of the Lease.

53.     Notwithstanding the existence of Landlord's security interest and Tenant's outstanding Rental obligations, and without Landlord's consent, Tenant removed the Collateral from the Leased Premises in connection with its vacation and abandonment of the Leased Premises.

54.    Tenant's unauthorized removal of the Collateral from the Leased Premises while in default of its Rental obligations constitutes a material breach of Section 2.5 of the Lease.

55.    As a direct and proximate result of Tenant's unauthorized removal of the Collateral, Landlord has been deprived of its security interest in the Collateral and its ability to exercise its contractual remedies thereunder, including its right to take possession of and sell the Collateral to satisfy Tenant's outstanding Rental obligations.

56.    Landlord has suffered and will continue to suffer damages as a result thereof, in an amount to be determined at trial.

57.    Pursuant to Section 2.5 of the Lease, Landlord is entitled to exercise all rights and remedies available to a secured party under the Florida Uniform Commercial Code, Chapter 679, Florida Statutes, including without limitation the right to recover the value of the Collateral wrongfully removed from the Leased Premises.

**WHEREFORE**, Plaintiff, Charles Schwab & Co., Inc., as Landlord and successor-in-interest to Mikeone EK Maitland Summit, LLC, demands judgment against Defendant, ThreatLocker, Inc. for: (a) all damages arising from Tenant's unauthorized removal of the Collateral from the Leased Premises in violation of Section 2.5 of the Lease; (b) the value of all Collateral removed from the Leased Premises without Landlord's consent; (c) all damages necessary to compensate Landlord for the loss of its security interest in the Collateral; (d) reasonable attorneys'

fees and costs pursuant to Section 7.4 of the Lease; and (e) such other and further relief as this Court deems just and proper.

Dated: May 15, 2026                                  Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: __/s/ *A. Sheila Oretsky*_____
A. SHEILA ORETSKY, ESQ.
Lead Counsel
Florida Bar No. 31365
sheila.oretsky@gtlaw.com
raquel.acuna@gtlaw.com
JENNIFER JUNGER, ESQ.
Florida Bar No. 125853
jungerj@gtlaw.com
fernandezfe@gtlaw.com
MiaLitDock@gtlaw.com

*Counsel for Plaintiff*